THOMAS E. GEIDT (SB# 080955)
KACIE L. ZANASSI (SB# 294242)
tomgeidt@gbgllp.com
kaciezanassi@gbgllp.com
GBG LLP
601 Montgomery Street, Suite 1150
San Francisco, CA  94111
Telephone:  (415) 603-5000
Facsimile:  (415) 840-7210

Attorneys for Defendant
SUTTER VALLEY MEDICAL FOUNDATION

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTEENA TINNIN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUTTER VALLEY MEDICAL FOUNDATION, and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 1:20-cv-00482-NONE-EPG<br><br>**DEFENDANT SUTTER VALLEY MEDICAL FOUNDATION'S SUPPLEMENTAL EVIDENTIARY SUBMISSION IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br><br>Judge:         Hon. Erica P. Grosjean<br>Courtroom:  10 |

Pursuant to the Court's March 27, 2021 Minute Order, Defendant Sutter Valley Medical Foundation submits the Declaration of John Verley attached hereto as Exhibit A.

DATED:  April 5, 2021                         GBG LLP


                                             BY:      /s/ Thomas E. Geidt
                                                         THOMAS E. GEIDT

                                             Attorneys for Defendant
                                             SUTTER VALLEY MEDICAL FOUNDATION

Case No. 1:20-cv-00482-NONE-EPG         DEFENDANT'S SUPPLEMENTAL EVIDENTIARY SUBMISSION IN OPPOSITION OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY

88747688.1

Exhibit A

THOMAS E. GEIDT (SB# 080955)
KACIE L. ZANASSI (SB# 294242)
tomgeidt@gbgllp.com
kaciezanassi@gbgllp.com
GBG LLP
601 Montgomery Street, Suite 1150
San Francisco, CA 94111
Telephone: (415) 603-5000
Facsimile: (415) 840-7210

Attorneys for Defendant
SUTTER VALLEY MEDICAL FOUNDATION

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTEENA TINNIN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUTTER VALLEY MEDICAL FOUNDATION, and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 1:20-cv-00482-NONE-EPG<br><br>**DECLARATION OF JOHN VERLEY IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br><br>Judge:       Hon. Erica P. Grosjean<br>Courtroom:  10 |

I, John Verley, declare:

1. I am the Director of Payroll for Sutter Health. I have held that position since November 2013. My business address is 9100 Foothills Blvd., Roseville CA. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to these facts.

2. I am providing this declaration pursuant to the Court's request for information as to the burden and expense that would be involved in producing timekeeping and payroll data for a proposed class of all non-exempt employees of Sutter Valley Medical Foundation employed from April 2, 2016 to the present. For the reasons I will explain, such a data retrieval would present an enormous burden under the systems we have in place, much greater than the burden of producing a smaller sampling of the time and payroll data.

3. Sutter's Payroll Department, which currently employs approximately 35 employees, administers the payroll centrally for all exempt and non-exempt employees of Sutter Health and its affiliates, pursuant to shared services agreements between its parent company, Sutter Health, and each of the entities that make up the Sutter Health network of companies. The Sutter Health system currently employs over 54,000 employees. Sutter's timekeeping and payroll records for all current and former employees are stored and maintained in various database servers located in and around Northern California.

4. Sutter Valley Medical Foundation ("SVMF") is one of Sutter's Health's affiliates. It is comprised mainly of the employees of two former Sutter Health affiliates, Sutter Gould Medical Foundation and Sutter Medical Foundation, which merged several years ago into SVMF. SVMF currently employs approximately 4,200 non-exempt employees, based in many different locations throughout Northern California.

5. For many years, Sutter has used a "Kronos" timekeeping software system to record employees' working time – currently, Kronos version 8.1.6. The Kronos system enables Sutter to generate certain "delivered" or "canned" time reports for each employee containing fixed fields of information. The report we typically work with on a daily basis is called a "Time Detail" report.

It shows, among other things, every employee's in-and-out time punch for every workday to the nearest minute. For the reasons explained below, whenever time records need to be printed out, retrieved or transmitted, we typically produce Kronos Time Detail reports in PDF format. These can be generated in an easy-to-read format for any employee. However, our Kronos software has various limitations on data retrieval, as I will explain.

6. We also can generate a Kronos Audit Trail report for each employee, which reflects the history of every time punch, including for example any corrections or adjustments that an employee makes or authorizes a timekeeper or supervisor to make due to missed punches and the like. These Audit Trail reports are considerably lengthier than the Time Detail reports due to the additional fields of information they contain. These reports typically involve more than twice as many lines of text as a Time Detail Report. They also tend to be more difficult to read, understand and interpret than Time Detail reports due to the nature of the historical data included in the report for each time punch.

7. Either of these two types of Kronos reports also can be produced in Excel rather than PDF format. Although this can be done, we are unable to generate readable or user-friendly Kronos Time Detail reports in Excel format from the "delivered" or "canned" reports that Kronos's software enables us to extract from our databases. The Excel versions of the Kronos Time Detail reports do not correctly reflect, and often do not even reflect at all, the employee's daily time punches. I and others on my team have worked with the vendor, Kronos, for years to try to fix this software limitation, so that our reports can be retrieved and produced in a workable, readable Excel format. Those efforts have been unsuccessful. This is why, in response to discovery requests such as the one in this case, regardless of the scope of the request, we produce the Time Detail reports in PDF format. We could produce Time Detail reports in Excel in this case, but I anticipate counsel would find them to be much less useful than the PDF version.

8. Likewise, Kronos Audit Trail reports can be generated in Excel rather than PDF, and those reports are somewhat more usable and readable than Excel Time Detail reports. Due, however, to similar system limitations in the vendor software, these reports tend to be garbled and

1   difficult to work with.

2       9.    Putting aside the issue of PDF versus Excel format, no matter which version of the
3   Kronos time reports we will be producing in discovery in this case, it would be extremely
4   difficult, time-consuming and expensive for us to produce all of the Kronos time records for all
5   non-exempt employees of SVMF covering the past five years. I have personally overseen or been
6   involved with many timekeeping data retrieval projects over the years, many of them pertaining
7   to wage and hour class actions that involved responding to discovery requests from plaintiffs'
8   counsel. As a result, I am very familiar with our system's capabilities and limitations. Under our
9   systems, there is a direct correlation between the sheer volume of Kronos data to be produced and
10  the amount of time and effort it takes to produce the data; it is not at all easier to produce a high
11  volume of data than a smaller sampling of the data. This is true whether the data being sought
12  covers an entire business unit, department, work location, or set of job titles, or rather is a random
13  sampling of employees in a larger unit.

14      10.    First, the SVMF employees are merely a subset (in essence, a larger sampling) of
15  the data for all of the Sutter-affiliated employees whose time records are maintained on our
16  database servers. Retrieving the data for 7,400 people over a five-year period is by no means
17  easier than retrieving it for, say, 740 people. To the contrary, it would be a considerably greater
18  burden. Whatever efficiencies could be derived from retrieving a company-wide set of data
19  rather than a randomly-chosen sample set would be outweighed by the extra cost, burden and
20  expense – under our particular systems – of having to manage such a large volume of data.

21      11.    This is due mainly to limitations on the volume of data that our systems permit us
22  to retrieve in any one data file. For example, our Kronos Excel program permits us to generate a
23  report consisting of no more than 65,536 lines of data in any one file. If we were to produce
24  Excel Audit Trail reports for 7,400 employees covering five years, I believe this would require us
25  to transmit the data in hundreds of separate data files. Ms. Tinnin's Audit Trail report covering
26  her one year of employment takes up 1,100 lines on an Excel spreadsheet. Assuming 5,000 lines
27  per employee for five years of employment, we likely would only be able to fit the Kronos data

28

for about 13 or so employees in one file (65,536/5,000). For 7,400 employees, this could potentially involve over 500 separate files (7,400/13). Even a Kronos Time Detail report, which I believe would involve half as many files, would likely require over 200 data files. In PDF format, which does not have the row limitation of Excel, I still estimate that it would require more than two dozen separate files, because the size of the files would become unwieldy. Ms. Tinnin's Time Detail report for her one year of employment was 168 kilobytes and 57 pages. A PDF file for 7,400 employees and five years could easily be over five gigabytes of data and over 2.1 million pages. For us, the burden is not so much in the number of gigabytes or pages, in and of itself, but rather in the number of separate files we would need to create under our system limitations, which requires considerable manual labor for us to process.

12. From a data retrieval standpoint under our systems, the more separate files we need to produce, the more manual labor would be involved in retrieving, formatting, processing and managing the whole process. We would need a crew of people to monitor and oversee the production of each file. Under any of these formats or report types, producing class-wide information would require us to use a team of Payroll Department employees, probably half a dozen or so (or bring in outside contractors at significant expense), to spend a portion of their time for up to several months retrieving the data. We cannot simply set up a companywide query, press a start button, and then sit back and wait for the system to spit out a large spreadsheet that contains all of the requested information. Our Payroll Department is simply not equipped to retrieve and send a very high volume of data.

13. For these reasons, if our Payroll Department were required to produce <u>two</u> or more sets of timekeeping reports for all 7,400 employees covering a five-year period – for example, a full set of Time Detail reports (whether in PDF or Excel) plus a full set of Audit Trail Reports, or a full set of the same reports in both PDF and Excel – this would more than double the magnitude of the retrieval project and be an even more expensive and massive project if done on a class-wide basis. This would be a nightmare for us.

14. Turning to our payroll reports, the software that we use to generate payroll reports

comes from a different vendor formerly known as "Lawson" and now, due to an acquisition, known as "Infor." This can be produced more easily in either PDF or Excel format than Kronos timekeeping data. However, as with Kronos data, producing payroll data for 7,400 employees covering a five-year period, under our systems, would again require creating multiple data files requiring manual labor to oversee and administer. This, on top of the Kronos project, would add to the Company's burden of production based on the sheer volume of data being sought.

15. Our Payroll Department currently is stretched thin due to extraordinary demands in dealing with pandemic issues; administering special COVID-related pay rules; applying the unique pay rules applicable to dozens of collective bargaining agreements; and dealing with multiple discovery requests for timekeeping, payroll records, wage statements and other data in other court cases. We cannot easily spare a team of people to devote the many dozens of hours that would be needed for this project. Complying with Ms. Tinnin's request would be a severe strain on our resources. It would still be burdensome for us to produce even a fairly large sample set of Kronos and Lawson data.

16. Finally, when our Payroll Department has produced samplings of timekeeping and payroll data in the past, I have never heard of any problems or complaints to the effect that production of a sample led to errors in the data or caused confusion in using it. I know of no reason why that should be the case more so in a sampling than in a full set of class-wide data.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 5th day of April, 2021, at Antelope, California.

_____
JOHN VERLEY

Case No. 1:20-cv-00482-NONE-EPG         -5-         DECLARATION OF JOHN VERLEY IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY