1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11    KRISTEENA TINNIN,                        Case No.  1:20-cv-00482-NONE-EPG

12              Plaintiff,

13        v.                                   ORDER GRANTING IN PART AND
                                               DENYING IN PART PLAINTIFF'S MOTION
14    SUTTER VALLEY MEDICAL                    TO COMPEL DISCOVERY RESPONSES
      FOUNDATION,
15                                             (ECF No. 30)
                Defendant.
16

17

18        Currently pending before the Court is Plaintiff Kristeena Tinnin's ("Plaintiff") motion to

19    compel Defendant Sutter Valley Medical Foundation ("Defendant") to produce documents. The

20    parties dispute whether Plaintiff may obtain a full data set of electronic employee payroll and

21    timekeeping records for all putative class members in native format prior to class certification, or

22    whether Defendant may limit its production to a sample of data. (*See* ECF No. 35.) As explained

23    below, the Court will order a sample of the responsive data at this time.

      **I.    BACKGROUND**
24

25        Plaintiff filed this action on April 2, 2020, alleging violations of the Fair Labor Standards

26    Act for failure to pay overtime wages; violations of the California Labor Code for failure to pay

27    minimum wages, failure to pay overtime wages, failure to comply with wage statement

28    provisions, failure to provide meal periods or premium wages, failure to pay all wages owed upon

                                                   1

termination or resignation; violation of California's Unfair Competition Law; and enforcement of the California Private Attorney General Act. (ECF No. 1.) On November 25, 2020, Plaintiff filed a motion to amend the complaint to include a rest break claim and class allegations. (ECF No. 10.) Defendant filed a response on December 23, 2020, indicating that it did not oppose amendment. (ECF No. 13.) The Court entered an order on January 14, 2021, granting Plaintiff's motion for leave to amend. (ECF Nos. 13, 15.) Plaintiff filed her First Amended Complaint on January 15, 2021. (ECF No. 17.)

Defendant filed a motion to dismiss, stay, or strike the First Amended Complaint on February 5, 2021. (ECF No. 19.) Plaintiff filed a Second Amended Complaint on February 25, 2021, and Defendant withdrew its motion on March 8, 2021. (ECF Nos. 28, 31.) On March 10, 2021, Defendant filed another motion to dismiss, stay, or strike the Second Amended Complaint. (ECF No. 32.) Defendant's motion is currently pending before District Judge Dale A. Drozd.

### A.    Plaintiff's Motion to Compel

On February 22, 2021, at the parties' request, the Court held an informal discovery dispute conference regarding Defendant's responses to Plaintiff's requests for production. (ECF Nos. 24, 27.) Each party submitted a letter brief in advance of the conference outlining their respective positions. (ECF Nos. 25, 26.) The parties disputed whether Defendant was required to respond to class-wide discovery in light of the pending motion to dismiss, stay, or strike the operative complaint. (*See id.*) After discussion with the parties at the conference, the Court granted Plaintiff permission to file a motion to compel. (ECF No. 27.)

On March 1, 2021, Plaintiff filed a motion to compel Defendant to produce documents and electronic data responsive to Plaintiff's Requests for Production Nos. 1-11, 13-16, 18-20, 22, 23, 24, 25-27, 32, 36, 41, and 46. (ECF No. 30.) Plaintiff's motion further sought "monetary sanctions" in the amount of $4,017.60. (ECF No. 30-1 at 18.) In support of the motion, Plaintiff filed more than three hundred pages of briefing, declarations, and exhibits. (ECF Nos. 30-1—30-22.)

On March 19, 2021, the parties filed a Joint Statement Re: Discovery Disagreement pursuant to Local Rule 251. (ECF No. 35.) The Joint Statement indicated that the parties had

1   reached an agreement regarding the majority of their disputes, and the only discovery requests

2   and responses at issue pertained to Requests for Production Nos. 1 and 3-5. (*Id.*) The Joint

3   Statement also included approximately twenty pages of briefing related to requests to which there

4   was no longer any dispute. (*Id.* at 6-27.)

5       Plaintiff requests the following documents in native electronic format for all current and

6   former employees from April 2, 2016, through the date of production: 1) payroll records, *i.e.*

7   records showing the total daily hours worked, gross and net wages earned, wages paid at all

8   applicable rates of pay, and the name and address of the employer; 2) time cards/sheets; 3) all

9   documents and electronically stored information showing the beginning and ending of each work

10  period; 4) all documents and electronically stored information showing the beginning and ending

11  of each meal period. (ECF Nos. 35 at 27-30, 30-8 at 5.) Defendant objects to these requests on

    various grounds, including that they are unduly burdensome. (ECF No. 35 at 27-30.)

12      Plaintiff contends that she needs a full data set of native, electronic timekeeping and

13  payroll information in native format to contrast against non-native time records and ensure that

14  there is overlap from the sampling of paper records. (ECF No. 35 at 30-31.) Plaintiff argues that

15  there is often little or no overlap between electronic data and paper sampling, and producing a

16  sample instead of full production of electronic data introduces errors into the production. (*Id.* at

17  31.) Additionally, Defendant has not articulated how producing a full data set of native electronic

18  data is any different from producing a partial sample, and production of a full data set requires the

19  same amount of work, if not less, than sampling would. (*Id.* at 32.) Plaintiff further requests that

20  the Court award Plaintiff sanctions against Defendant in the amount of $4,017.60 for being forced

21  to bring this discovery motion. (*Id.* at 4.)

22      Defendant, in turn, argues that "producing company-wide timekeeping and payroll data

23  would be an enormous strain and burden on [Defendant's] Payroll Department[.]" (ECF No. 35 at

24  33.) Additionally, courts routinely impose limitations on pre-certification discovery to minimize

25  burden, including permitting sampling of records. (*Id.* at 34.) Sampling also makes sense because

26  that is being done in other pending wage and hour cases that Defendant contends are related to

27  this one. (*Id.* at 34.) Even if the Court compels Defendant to produce company-wide timekeeping

28  and payroll data, Defendant's position is substantially justified and sanctions are not warranted.

1    (*Id.* at 35.)

2         On March 26, 2021, the Court held a hearing on the motion. (ECF No. 37.) Counsel Juan

3    Gamboa and Stanley Mallison appeared telephonically on behalf of Plaintiff and counsel Thomas

4    Geidt appeared telephonically on behalf of Defendant. (*Id.*) Following the hearing, the Court

5    granted Defendant leave to file supplemental briefing regarding the burden imposed by the

6    discovery requests at issue. (ECF No. 38.)

7         **B.      Evidence of Burden on Defendant**

8         On April 5, 2021, Defendant filed a declaration from John Verley, Defendant's Director

9    of Payroll. (ECF No. 39.) Mr. Verley explained how Defendant's timekeeping and payroll

10   software systems work, and the limitations on data retrieval with each system. (*Id.* at 4-8.)

11   According to Mr. Verley's declaration, Defendant's Kronos timekeeping software can produce

12   reports in PDF or Excel format, but the Excel versions "do not correctly reflect, and often do not

13   even reflect at all, the employee's daily time punches" and "tend to be garbled and difficult to

14   work with." (*Id.* at 5-6.) Mr. Verley's department has been working with the vendor for years to

     try to fix the software limitations but those efforts have been unsuccessful. (*Id.* at 5.)

15        Mr. Verley further states that, regardless of which format is produced, it is time-

16   consuming to produce all Kronos time records for all non-exempt employees covering a five-year

17   period because higher volumes require more time and effort to produce. (ECF No. 39 at 6.) This

18   is mainly due to limitations on the volume of data that Defendant's systems can retrieve in one

19   data file. (*Id.*) For example, the Kronos Excel program can generate a report consisting of no

20   more than 65,536 lines of data in one file, and production for 7,400 employees over five years

21   would likely require more than 500 separate data files for an Audit Trail report and over 200

22   separate data files for a Time Detail report. (*Id.* at 6-7.) The burden on Defendant relates to the

23   number of separate files that would need to be created, because they require manual labor to

24   retrieve, format, process, and manage. (*Id.* at 7.) Defendant would require a crew of people to

25   monitor and oversee production of each file, consisting of approximately half a dozen Payroll

26   Department employees or outside contractors at significant expense. (*Id.*) It would take several

27   months for Payroll Department employees spending a portion of their time to retrieve the data for

28   the entire class, and if Defendant is required to produce two or more sets of timekeeping reports,

this would more than double the magnitude of the project. (*Id.*)

As to Defendant's payroll reports, Defendant uses a different vendor that can be produced more easily in either PDF or Excel format than timekeeping data can be produced. (ECF No. 39 at 8.) However, producing class-wide payroll reports would also require creating multiple data files and manual labor to oversee and administer. (*Id.*)

Finally, Mr. Verley explains that his department is currently stretched thin due to "extraordinary demands" in dealing with pandemic issues, administering special COVID-related pay rules, applying unique pay rules applicable to collective bargaining agreements, and dealing with discovery requests in other cases. (ECF No. 39 at 8.) Defendant's Payroll Department cannot easily spare a team of people to devote the many dozens of hours that would be needed to produce the class-wide discovery Plaintiff requests, and doing so would be a "severe strain" on Defendant's resources. (*Id.*)

## II.      LEGAL STANDARDS

### A.      Discovery Generally

Federal Rule of Civil Procedure 26(b)(1) provides that parties:

> May obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. Pro. 26(b)(1). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Bryant v. Ochoa*, 2009 WL 1390794 at *1 (S.D. Cal. May 14, 2009) (citations omitted).

### B.      Class Action Discovery

As for discovery in the class certification context, "[w]hether or not discovery will be permitted . . . lies within the sound discretion of the trial court." *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975). Although a party seeking class certification is not always entitled

1  to discovery on the class certification issue, "[t]he propriety of a class action cannot be

2  determined in some cases without discovery." *Id.* at 210. "[T]he better and more advisable

3  practice for a District Court to follow is to afford the litigants an opportunity to present evidence

4  as to whether a class action was maintainable." *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304,

5  1313 (9th Cir. 1977). Ninth Circuit case law "stand[s] for the unremarkable proposition that often

6  the pleadings alone will not resolve the question of class certification and that some discovery

7  may be warranted." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009).

8  In determining whether to grant pre-certification class discovery, a court should consider "its

9  need, the time required, and the probability of discovery resolving any factual issue necessary for

10  the determination." *Kamm,* 509 F.2d at 209.

11        **C.        Motions to Compel**

12        Under Rule 37, a party seeking discovery may move for an order compelling production if

13  the responding party fails to produce documents responsive to a discovery request. Fed. R. Civ. P.

14  37(a)(3)(B). Local Rule 251 requires the parties to submit a Joint Statement re Discovery

15  Disagreement in support of any motion to compel. E.D. Cal. Local Rule 251(c). All arguments

16  and briefing that would otherwise be included in a memorandum of points and authorities

17  supporting or opposing a motion to compel must be included in the joint statement, and no

18  separate briefing is permitted. *Id*.

19        If a motion to compel is granted, the Court must, after giving an opportunity to be heard,

20  require the party whose conduct necessitated the motion or its attorney to pay the movant's

21  reasonable expenses incurred in making the motion, including attorney's fees. Fed. R. Civ. P.

22  37(a)(5)(A). However, the Court must not order payment of expenses if the movant did not

23  attempt in good faith to obtain discovery without court action, the opposing party's nondisclosure,

24  response, or objection was substantially justified, or other circumstances make an award of

25  expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). If the motion is granted in part and denied in

26  part, the Court may apportion reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C).

26  ///

27  ///

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.     DISCUSSION

The parties do not dispute that the discovery requests at issue are relevant, and instead disagree as to whether it would be unduly burdensome for Defendant to produce a full set of responsive payroll and timekeeping electronic records in native Excel format as Plaintiff requests. (*See* ECF No. 35.)

As the party opposing discovery, Defendant has the burden of supporting its objections. Defendant arguably did not provide sufficient support for its assertion of undue burden during the parties' meet and confer or in the joint statement. Indeed, the only support for Defendant's objection based on burden in the joint statement filed with the Court was one paragraph making the general claim that Defendant's payroll department had indicated that "pulling time and payroll records for the entire class in excel format, or even in pdf format, would be *extremely* burdensome." (ECF No. 35 at 36.) During the hearing, counsel for Defendant claimed that he had not included more factual support based on an understanding that it would not be permitted under the Local Rule governing the Joint Statement re Discovery Disagreement. While Defendant certainly could have provided further support of its argument of burden at an earlier time, in light of Defendant's counsel's representations at the hearing and the desire to determine the contested issue on a sufficient factual basis, the Court permitted Defendant to file a brief declaration explaining the burden. Defendant did so through the declaration of John Verley, summarized above.

The Court finds that the information in Mr. Verley's declaration meets Defendant's burden of supporting its objection of undue burden. Defendant contends, and Plaintiff does not dispute, that the putative class consists of approximately 7,400 employees. (ECF No. 35 at 35.) As explained in John Verley's declaration, producing the records Plaintiff seeks in the requested Excel format for a class of this size is time consuming and requires significant manual labor to retrieve, format, process, and manage. (ECF No. 39.)

Plaintiff argues that a full data set is preferred and sampling is inadequate because electronic sampling often has "little or no overlap" with paper records, and "introduces errors into the production that can unintentionally obfuscate the relationships between the data." (ECF No. 35 at 31.) Notably, in the Joint Statement, Plaintiff provides no support for its view that sampling

7

1     is deficient in any way. At the hearing, Plaintiff pointed to a declaration from Aaron Woolfson,

2     submitted as part of the more than 300 pages Plaintiff filed in connection with its motion to

3     compel. (*See* ECF No. 30.) As described above, the Eastern District Local Rules limit filings to

4     the Joint Statement re Discovery Disagreement, absent permission from the Court. Plaintiff

5     neither sought nor obtained such permission. The Court is within its discretion to disregard this

6     filing, which violates the letter and spirit of that rule. But even accepting Plaintiff's argument, it

7     appears that sampling would be sufficient for the issues of class determination. Having a

8     relatively small margin of error does not appear to affect any decision on class

9     certification. Moreover, nothing in this order precludes Plaintiff from moving for additional

10    records if necessary for another stage of this case.

11          The Court has discretion in controlling the scope of pre-certification. *Aldapa v. Fowler

12    Packing Co., Inc.,* 310 F.R.D. 583, 589 (E.D. Cal. 2015). Courts routinely order sampling of

      class-wide records when production is unduly burdensome. *Soto v. Castlerock Farming and

13    Transp., Inc.*, 2011 WL 2680839, at *7 (E.D. Cal. July 8, 2011) (collecting cases); *room v. GMRI,

14    Inc.,* 2013 WL 11310656, at *5 (C.D. Cal. Jan. 25, 2013) ("Sampling is . . . a commonly used and

15    reasonable compromise at the class certification stage of a case"); *Quintana v. Claire's Boutiques,

16    Inc.,* 2014 WL 234219, at *2 (N.D. Cal. Jan. 21, 2014) ("In the specific context of class action

17    discovery, sampling advances the goal of proportionality advanced under Fed. R. Civ. P.

18    23(b)(3)(c)(iii).") *cf. Urena v. Central California Almond Growers Assn.*, 2019 WL 2390042, at

19    *6 (E.D. Cal. June 5, 2019) (declining to order sampling where the putative class was "relatively

20    small"). At this early stage of the proceedings, when a scheduling order has not yet issued and a

21    motion to dismiss is pending, the broad discovery Plaintiff seeks is unduly burdensome and is not

22    proportional to the needs of the case. Sampling is an appropriate method to relieve the burden on

23    Defendant in light of the number of employees involved and the limitations of Defendant's

24    systems. Therefore, the Court will order Defendant to produce a representative sample of

25    responsive timekeeping and payroll records. Plaintiff is not precluded from later requesting

26    additional discovery if doing so is appropriate and proportional to the needs of the case.

27          Plaintiff also moves to compel production of responsive data in native format. (ECF No.

28    35 at 30.) Plaintiff says that the term "native" typically refers to the Excel file format of ".xlsx."

8

1    (*Id.*) Defendant argues that producing timekeeping and payroll data in Excel format is possible,

2    but not preferable, as the extraction of data from the Kronos database in Excel format results in

3    severe readability problems. (*Id.* at 36-37.) Mr. Verley's declaration further explains the

4    difficulties in extracting data from Kronos in Excel, as opposed to PDF, format. (ECF No. 39 at

5    5-8.) The Court will grant Plaintiff's motion insofar as she may choose between formats.

6    Defendant has now explained its view of the advantages and disadvantages of the various

7    productions. With the benefit of this information, Plaintiff may select the type of production it

8    requests. In other words, if despite learning more about the disadvantages of native Excel

9    production, Plaintiff nevertheless wishes to receive data in that format, Defendant must produce

10   the data in that format.

11         The Court now turns to the appropriate sample size. At the hearing, Defendant proposed a

12   sample size of 10%. The Joint Statement, in turn, indicates Plaintiff previously proposed

13   sampling at a rate of 75%. (ECF No. 35 at 30-31.) However, neither party has explained why their

14   proposed sample size is warranted. In light of the circumstances of the case, and balancing the

15   relevance of the information with the burden on Defendant, the Court finds that a sample size of

16   20% is reasonable in light of the estimated putative class size of approximately 7,400 employees.

17   *See, e.g., Aldapa,* 310 F.R.D. at 589 (ordering sampling of approximately 25% of employees);

18   *Talavera v. Sun Maid Growers of California,* 2017 WL 495635, at *4 (Feb. 6, 2017) (ordering a

19   10% sample in a putative class of 5,309); *Brum v. MarketSource, Inc.*, 2018 WL 3861558, at *4-6

20   (E.D. Cal. Aug. 14, 2018) (ordering a 10% sample of wage statements and a 30% sample of

21   electronic time and payroll records in a putative class of 7,400); *Romo v. GMRI, Inc.,* 2013 WL

22   11310656, at *16-17 (ordering a 20% sample in a putative class of 21,000).

23         In light of the foregoing, Plaintiff's request for attorneys' fees incurred in bringing the

24   motion is denied. Additionally, the Court declines to apportion expenses under Rule 37(a)(5)(C).

25   Plaintiff improperly submitted voluminous records and briefing in contravention of Local Rule

26   251.[1] *See* E.D. Cal. Local Rule 251(c). Likewise, it appears that Defendant delayed in providing a

     detailed explanation of the burden until after the motion was filed. Moreover, both parties

27   _____

28   [1] To the extent Plaintiff later requests an award of attorneys' fees in connection with this case, the Court
     notes that the amount of fees Plaintiff incurred in bringing this motion does not appear to be warranted or a
     reasonable use of time.

included briefing in the Joint Statement about issues fully resolved, which was confusing and inefficient. Under the circumstances, each party should bear their respective costs and fees incurred in connection with the motion and apportionment of expenses is not appropriate.

**IV.    CONCLUSION AND ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion to compel Defendant to produce documents (ECF No. 30) is GRANTED IN PART and DENIED IN PART;

2.    Defendant shall produce data responsive to Plaintiff's Requests for Production Nos. 1 and 3-5;

3.    Defendant's production shall be limited to a 20% representative sample of putative class members;

4.    Plaintiff shall specify the format it wishes for the production within seven (7) days of this order;

5.    Plaintiff shall designate an appropriate sampling procedure within thirty (30) days from the date of this order. Defendant must promptly provide assistance in terms of any necessary information needed to determine the sampling procedure. Defendant shall produce the responsive data within forty-five (45) days of Plaintiff's designation of the sampling procedure. If any disputes arise, the parties shall contact the Court to set an informal discovery dispute conference;[2] and

6.    Plaintiff's request for attorneys' fees pursuant to Federal Rule of Civil Procedure 37(a)(5) is DENIED.

IT IS SO ORDERED.

Dated:    **April 7, 2021**                        /s/ Erica P. Grosjean
                                                            UNITED STATES MAGISTRATE JUDGE

---

[2] If the parties agree to extend these deadlines, they may submit a stipulation and proposed order extending time for the Court's approval.