1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11 | KRISTEENA TINNIN, on behalf of herself and all others similarly situated,

Case No. 1:20-cv-00482-JLT-EPG

12

Plaintiff,

13

v.

**ORDER DENYING MOTION TO DISMISS, STAY, AND/OR STRIKE**

14

15 | SUTTER VALLEY MEDICAL FOUNDATION, and DOES 1 through 20, inclusive,

(Doc. 32)

16

17 | Defendants.

18

## I.       INTRODUCTION

19        Kristeena Tinnin alleges her former employer committed wage and hour violations under

20   the federal Fair Labor Standards Act, various provisions of the California Labor Code, and

21   California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. (Doc. 1.) In the

22   instant motion, Defendant argues that the FLSA cause of action should be dismissed for failure to

23   state a claim; and that the California class action claims should be dismissed or stayed, or, failing

24   this, that the class allegations should be stricken. (Doc. 32.) For the reasons set forth below,

25   Defendant's motion is **DENIED**.

26   ## II.       MOTION TO DISMISS THE FLSA CLAIM

27   **A.       Motion to Dismiss Standard**

28        A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250

1

F.3d 729, 732 (9th Cir. 2001). In ruling on a motion to dismiss filed pursuant to Rule 12(b), the Court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

When considering a motion to dismiss, the Court must accept the factual allegations made in the complaint as true. *Hosp. Bldg. Co. v. Rex Hosp. Tr.*, 425 U.S. 738, 740 (1976). A court must construe the pleading in the light most favorable to the plaintiffs and resolve all doubts in favor of the plaintiffs. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, legal conclusions need not be taken as true when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). To the extent pleadings can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**B.    Analysis of FLSA Claim**

Plaintiff's first claim for relief arises under the FLSA, which regulates the minimum wages paid to employees, including wages for "overtime" work. *See* 29 U.S.C. §§ 206-207; *Dent v. Cox Commc'ns. Las Vegas, Inc*., 502 F.3d 1141, 1143 (9th Cir. 2007). Under the FLSA, an

2

employee who works more than forty hours a week must be paid at least one and one-half times his or her regular rate for the additional hours. 29 U.S.C. § 207(a)(1). An employer who violates Section 207 "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

In moving to dismiss, Defendant relies principally (*see* Doc. 32 at 11–12) on *Landers v. Quality Commc'ns, Inc.*, in which the Ninth Circuit addressed for the first time "the degree of specificity required to state a claim for failure to pay minimum wages or overtime wages under the FLSA" following the Supreme Court's decisions in *Twombly* and *Iqbal*. 771 F.3d 638, 640 (9th Cir. 2015). The Ninth Circuit noted: "Pre-*Twombly* and *Iqbal*, a complaint under the FLSA for minimum wages or overtime wages merely had to allege that the employer failed to pay the employee minimum wages or overtime wages." *Id.* at 641. However, the Ninth Circuit observed that with *Twombly* and *Iqbal*, the Supreme Court clarified plaintiffs must allege facts sufficient to "state[] a plausible claim for relief." *Id*. Therefore, the Ninth Circuit determined that "to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Id.* at 644–45. *Landers* explained:

> [T]he plausibility of a claim is "context-specific." A plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility. Obviously, with the pleading of more specific facts, the closer the complaint moves toward plausibility. However, like the other circuit courts that have ruled before us, we decline to make the approximation of overtime hours the *sine qua non* of plausibility for claims brought under the FLSA.

*Landers*, 771 F.3d at 645 (internal citations omitted). Accordingly, generalized allegations of FLSA violations will not suffice. *Id.* at 645–66.

Landers alleged his employer "implemented a '*de facto* piecework no overtime' system and/or failed to pay . . . overtime wages for the hours worked by Landers," which resulted in "the plaintiffs not being paid time and one-half their 'regular hourly rate' for work in excess of 40

3

1   hours a week." *Id.* at 645–46. Further, Landers asserted he "worked more than 40 hours per week

2   for the defendants, and the defendants willfully failed to make said overtime and/or minimum

3   wage payments." *Id.* at 646. The Ninth Circuit determined these allegations were insufficiently

4   specific, observing: "Notably absent from the allegations in Landers's complaint . . . was any

5   detail regarding a given workweek when Landers worked in excess of forty hours and was not

6   paid overtime for that given workweek and/or was not paid minimum wages." *Id.* Though FLSA

7   plaintiffs "cannot be expected to allege 'with mathematical precision,' the amount of overtime

8   compensation owed by the employer, they should be able to allege facts demonstrating there was

9   at least one workweek in which they worked in excess of forty hours and were not paid overtime

10  wages." *Id.* (citation omitted). Therefore, Landers failed to allege facts sufficient to support a

11  claim for violation of the FLSA. *Id.*

12       Following *Landers*, courts have rejected allegations that do no more than parrot the

13  elements of an FLSA claim. *See, e.g., Tan v. GrubHub, Inc.,* 171 F. Supp. 3d 998, 1007–08 (N.D

14  Cal. 2016) (finding FLSA claim too conclusory because "[t]here are no allegations about what

15  period of time or type of conduct Plaintiffs are counting as hours worked. Without these basic

16  factual allegations, the Court cannot conclude that Plaintiffs' minimum wage or overtime claims

17  are plausible."); *Shann v. Durham Sch. Servs., L.P.*, 182 F. Supp. 3d 1044, 1047 (C.D. Cal. 2016)

18  (finding insufficient allegation that plaintiffs "worked more than 40 hours per week, without

19  being paid the proper overtime pay as required by the FLSA, during the period of time they

20  worked 'off the clock'").

21       For example, in *Perez*, cited here by Defendant, the plaintiffs alleged they suffered

22  minimum wage and overtime wage violations under the FLSA because they:

23           (1) were interrupted during their breaks, (2) were paid for less than
             the overtime hours actually worked, (3) were not provided with
24           premium payments for all meal and rest periods that defendants
             forced them to miss, (4) had their time records improperly adjusted
25           to reflect meal breaks that were not actually taken, (5) were required
             to finish their allotted work even after clocking out for the day, and
26           (6) did not have the value of certain fringe benefits factored into the
             calculation of their rate of pay for overtime hours.
27

28  *Perez*, 2020 WL 4344911 at * 8. Of particular note, the *Perez* plaintiffs did not "identify a single

4

1    workweek where they were not paid the . . . overtime pay for any hours worked in excess of eight

2    hours in one workday and forty hours in any one workweek." *Id. Perez* noted that though one

3    plaintiff alleged she "often works 48 hours per week over 6 days, but . . . is only paid for 43 to 45

4    hours for those [hours]," she did not allege "what constitutes 'often' and whether it even

5    represents the 'average workweek during the applicable period.'" *Id.* (quoting *Landers*, 771 F.3d

6    at 645). Furthermore, the *Perez* plaintiffs did not identify the average rates at which they were

7    paid or estimate the amount of overtime wages owed. *Id.* Accordingly, dismissal of the overtime

8    claim was appropriate. *Id.; see also Barajas v. Blue Diamond Growers Inc*., No. 1:20-CV-0679

9    JLT SKO, 2022 WL 1103841, at \*10 (E.D. Cal. Apr. 13, 2022) (finding insufficient allegation

10   that defendant "routinely" required "Plaintiffs and similarly situated employees to work more

11   than 40 hours per week, and routinely without paying them all overtime premium wages for hours

12   worked in excess of 40 hours per week," because, without any additional details, "*Landers*

13   established a plaintiff's allegation that overtime occurred 'routinely' is not sufficient to establish

14   the plausibility of a claim").

15          However, "*Landers* does not require the plaintiff to identify an exact calendar week or

16   particular instance of denied overtime; instead, the allegations need only give rise to a plausible

17   inference that there was such an instance." *Tan*, 171 F. Supp. 3d at 1008 (citing *Boon v Canon*

18   *Business Solutions, Inc.*, 592 Fed. Appx. 631, 632 (9th Cir. 2015)). In *Boon*, the Ninth Circuit

19   rejected a district court's strict interpretation of *Landers* that required a complaint "contain an

20   estimate of how much uncompensated time was worked, how often, and at what rate to survive a

21   motion to dismiss." 592 Fed. Appx. at 632 (internal quotation marks and alteration omitted).

22   Instead, a plaintiff must identify facts that give rise to a plausible inference that he was not paid

23   minimum wage or overtime during at least one work week. *Id*. It was sufficient that the complaint

24   in *Boon* "identified tasks for which [the plaintiff] was not paid and alleged that [the plaintiff]

25   regularly worked more than eight hours in a day and forty hours in a week." A detailed example

26   of such task-specific allegations is presented in *Price v. Wells Fargo & Co.*, No. 22-CV-03128-

27   JSC, 2022 WL 4225396, at \*2 (N.D. Cal. Sept. 13, 2022). There, plaintiffs who worked as

28   telephone customer service representatives and home loan processing agents, advanced the

following allegations:

> [Plaintiffs] are required to be "ready to handle a call at the start of their scheduled shift time," but they first have to "log[ ] on into Wells Fargo's telephone systems and call queue" which requires them to arrive at work prior to their scheduled shift time to "boot up computers, initialize several software programs, and read company emails and/or instructions." In particular, they are required "to open and initialize several software programs, such as Timetracker, DAT, Hogan, CIV, Visa, Claims, SOTA, Windows, Outlook, Cisco Jabber, and Workday among others." Opening these programs and systems takes "additional time" and it is only "after all the processes are completed and programs started could Plaintiffs and other similarly situated employees log into Soft Phone, which commences and records the paid portion of their workday."

> Plaintiffs also allege that pursuant to Wells Fargo's policy and practice, employees are subject to discipline if "they are not logged into their phones and ready to handle calls by the start of their scheduled shift time." Employees likewise "regularly worked past the end of their scheduled shift times when [they] logged off their software programs and computers and secured their work stations and Wells Fargo's customer and proprietary information pursuant to Wells Fargo's policies and practices." Plaintiffs allege that Wells Fargo is aware of this off-the-clock work because managers and supervisors physically observed employees performing this off-the-clock work and received electronic reports of employees performing this off-the-clock work.

2022 WL 4225396, at *2 (record citations omitted). These cumulative allegations provided "sufficient detail about the length and frequency of [plaintiffs'] unpaid work to support a reasonable inference that [they] worked more than forty hours in a given week" *Id.*

Though *Boon* suggests that a plaintiff states a FLSA claim by identifying tasks for which they were not paid, these descriptions must provide "meaningful detail." *Compare Turner v. LTF Club Mgmt. Co., LLC*, No. 2:20-CV-00046-KJM-JDP, 2022 WL 1018498, at *6 (E.D. Cal. Apr. 5, 2022) (allegations insufficient where plaintiff "merely provide[d] a description of general work duties common to many workplaces" and "d[id]not provide any meaningful detail to give a sense of when the alleged violations happened or how often they happened"), *with Sagastume v. Psychemedics Corp.*, No. CV 20-6624 DSF (GJSx), 2020 WL 8175597, at *3 (C.D. Cal. Nov. 30, 2020) (allegations sufficient where plaintiff claimed "she and other class members worked in excess of eight hours a day or forty hours a week performing work duties off the clock, 'such as performing data entry, analyzing hair samples, weighing hair samples, cleaning and organizing

6

1  work station, gathering supplies necessary for work-related tasks, [and] receiving and answering

2  work-related questions from supervisors and managers'").

3       The SAC contains the following substantive FLSA overtime allegations:

> On an average given work week, Plaintiff was scheduled to work
> from about 8 AM to 5:30 PM. However, Plaintiff was required to
> arrive at work 30-minutes early because she would be marked late
> otherwise. Plaintiff would wait at the workplace before clocking in
> five (5) minutes before her shift. Similarly, on an average given work
> week, Plaintiff was also required to work during break periods
> without compensation. This time worked in an average work week
> exceeded the forty hours of work she was scheduled for and resulted
> in overtime hours worked. Plaintiff was never compensated for these
> overtime hours worked while in the employ of Defendant.

(SAC, ¶ 50.) These allegations, though not as robust as those in *Price* or in *Sagastume*, "nudge"

the FLSA claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The

SAC explains what kinds of activities Plaintiff claims were uncompensated and indicates that this

uncompensated time pushed Plaintiff's workweek beyond forty hours. The SAC further alleges

that such weeks—weeks in which Plaintiff was required to work uncompensated time beyond

forty hours—were indeed her "average" workweeks. This allegation plausibly suggests that

uncompensated work was the "norm"[1] for Plaintiff. In light of *Boon* and its progeny, the SAC's

FLSA allegations are sufficient for pleading purposes. Defendant's motion to dismiss the FLSA

claim is **DENIED**.

### III.    MOTION TO DISMISS OR STAY CALIFORNIA CLASS CLAIMS

       Defendant next moves to dismiss or stay the California Class claims based upon the first-

to-file doctrine and *Colorado River* abstention. Alternatively, Defendant request a discretionary

*Landis* stay.

**A.    First-to-File Rule**

       Defendant first argues that the so called "first-to-file" doctrine warrants a stay of the

California Class Claims because similar claims were pending in two state court actions[2] prior to

---

[1] One definition of "average" is "a typical amount, rate, degree, etc.; *norm*." *Average*, Dictionary.com (last visited December 23, 2022).

[2] Those actions are *Price v. Sutter Valley Med. Foun.*, Stanislaus County Superior Court Case No. CV-19-001331, and *Rodriguez v. Sutter Valley Med. Found.*, Stanislaus County Superior Court Case No. CV-20-002132.

1  Plaintiff amending her complaint to include California class claims in this case. The Court need

2  not belabor an analysis of the content and timing of the state court actions vis-à-vis this case

3  because regardless of their similarity or timing, the first-to-file doctrine does not apply to cases

4  brought before a different sovereign.

5          As one district court in California recently explained:

6                The first-to-file rule is a doctrine of federal comity that "permits a
                 district court to decline jurisdiction over an action when a complaint
7                involving the same parties and issues has already been filed in
                 another district." *Pacesetter Sys. v. Medtronic, Inc.*, 678 F.2d 93, 94–
8                95 (9th Cir. 1982). It permits a court to exercise its discretion to
                 dismiss, stay, or transfer a case "in deference to an earlier-filed suit"
9                involving substantially the same parties and issues. *In re Bozic*, 888
                 F.3d 1048, 1052, 1055 (9th Cir. 2018).
10

11               The first-to-file rule applies to cases "previously filed in another
                 *district court*." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787
12               F.3d 1237, 1239 (9th Cir. 2015) (emphasis added). As such, it does
                 not enable federal courts to dismiss, stay, or transfer a case based on
13               an earlier-filed suit pending in state court. *See Kelley v. HCR
                 ManorCare, Inc.*, No. SACV 17-1259 JVS (JCGx), 2017 WL
14               10441310, at *2 (C.D. Cal. Nov. 28, 2017) ("[T]he first-to-file
                 doctrine does not extend to state court proceedings."); *Cummins v.
15               Lollar*, CV 11-08081 DMG (MANx), 2011 WL 13134834, at *4
                 (C.D. Cal. Dec. 14, 2011) (finding the rule did not apply because the
16               first-filed case was pending in state court); *Occhionero [v. Salinas]*,
                 No. 1:16-cv-00311-DAD-SAB, 2016 WL 3448104, at *4 (E.D. Cal.
17               Jun. 23, 2016) (explaining that the rule "does not require dismissal
                 of federal proceedings because the first suit was filed in state court").

18  *Murphy v. Viad Corp.*, No. CV 21-7839 PSG (MARx), 2022 WL 3137720, at *3–*4 (C.D. Cal.

19  May 13, 2022). Though there are a few outlying decisions that suggest otherwise, *see Gens v.

20  SEZ Am., Inc.*, No. C 05-01009 JF (PVT), 2007 WL 832050, at *4 (N.D. Cal. Mar. 19, 2007), the

21  overwhelming majority of cases have concluded that "the federal first-to-file rule does not apply"

22  where the first-filed case is pending in state court. *See Murphy*, 2022 WL 3137720, at *4.[3]

23  Moreover, "[t]he Supreme Court has been clear that the *Colorado River* abstention doctrine,

24  rather than the first-to-file rule, governs a federal court's decision whether to defer to a state court

25  and abstain from exercising jurisdiction and that abstention under Colorado River should be much

26  rarer than abstention under the first-to-file rule." *Wells Fargo Bank, N.A. v. Zadourian*, No. CV

27

28  _____
    [3] Defendant appears to be deliberately ignoring this aspect of the caselaw, choosing to cite to various cases for the
    proposition that application of the first-to-file doctrine is discretionary, without acknowledging that those cases
    discuss at least indirectly and never stray beyond the limited scope of the doctrine. (*See* Doc. 46 at 5.)

8

1   20-7512-JFW(JPRX), 2021 WL 8945108, at *1 (C.D. Cal. Feb. 10, 2021) (internal citations

2   omitted). Thus, Defendant's request for a stay based upon the first-to-file rule is **DENIED**.

3   **B.    *Colorado River* Abstention**

4           In its original motion, filed March 10, 2021, Defendant also argued that a stay of the

5   California Class claims is warranted under the abstention doctrine set forth in *Colorado River*

6   *Water Conservation District v. United States*, 424 U.S. 800 (1976). At that time, Defendant did

7   not request that the Court stay the FLSA claims pursuant to *Colorado River*. (*See* Doc. 32 at 15–

8   19.)

9           However, on February 24, 2021, several weeks <u>before</u> Defendant filed its motion to

10  dismiss, the Ninth Circuit issue a ruling that explicitly prohibits partial *Colorado River* stays.

11  *United States v. State Water Res. Control Bd*., 988 F.3d 1194 (9th Cir. 2021). Defendant

12  acknowledged this holding in their reply, and sought a complete stay of all the claims, including

13  the FLSA claim. (Doc. 46 at 7.)

14          This change of course required an entire new line of argument addressing whether the

15  state overtime claims may render the FLSA claims moot. (*See id*. at 7–8.) These arguments,

16  raised for the first time in reply, need not be considered by the Court. *Xiong v. Chavez*, No. 1:13-

17  CV-00083-SKO, 2016 WL 345609, at *20 (E.D. Cal. Jan. 28, 2016) ("Reply briefs should be

18  limited to matters raised in the opposition papers. It is improper for the moving party to introduce

19  new facts or different legal arguments in the reply brief than presented in the moving papers.")

20  (citing *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("district court need not consider

21  arguments raised for the first time in a reply brief")).

22          Defendant's motion for a partial stay pursuant to *Colorado River* is in conflict with

23  binding caselaw and is therefore **DENIED**; the alternative motion for a complete stay is likewise

24  **DENIED** because that argument was raised for the first time in reply.

25  **C.    *Landis* Stay**

26          Defendant next argues that a stay of the California class claims is warranted under *Landis*

27  *v. North American Co*., 299 U.S. 248, 254 (1936). In the context of a *Landis* stay request, courts

28  in the Ninth Circuit weigh the "competing interests which will be affected by the granting or

9

1   refusal to grant a stay," including: "[1] the possible damage which may result from the granting of

2   a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and

3   [3] the orderly course of justice measured in terms of the simplifying or complicating of issues,

4   proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant*,

5   398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir.

6   1962)).

7        Assuming purely for purposes of argument that a *Landis* stay is appropriate where the

8   competing action arises in state court,[4] the present record does not justify such an action at this

9   time. In pressing for a *Landis* stay of the California class claims only, Defendant makes two

10   central arguments. First, Defendant maintains that a stay will promote judicial efficiency because

11   the Class claims in this matter are nearly identical to those in the *Price* and *Rodriguez* actions.

12   Absent a stay, Defendant argues that this Court will have to address nearly identical class

13   certification and possibly summary judgment motions, risking inconsistent outcomes. (Doc. 32 at

14   20.) Second, Defendant argues that a stay is warranted because it is facing the "immense burden"

15   of defending against the same issues and responding to the same discovery in separate cases. (*Id*.)

16        As to the "immense burden" argument, it is notable that Defendant's initial motion sought

17   only to stay the California class claims, not <u>Plaintiff's FLSA claims</u>, under *Landis*.[5] This alone

18   almost completely undermines this basis for imposing a *Landis* stay. There is considerable factual

19   overlap between Plaintiff's FLSA claim and her California class claims. As a result, discovery

20   related to the FLSA claim likely will substantially overlap that which will take place in

---

[4] Plaintiff suggests that, like with the first-to-file doctrine, a *Landis* stay is inherently inappropriate where the competing litigation was filed in state court. There appears to be a split in authority on this issue. In *Patel v. City of Los Angeles*, 594 Fed. Appx. 415, 416 (9th Cir. 2015), the Ninth Circuit suggested in dicta that a district court could stay proceedings during the pendency of a state court action under *Landis*. Some district courts have read *Patel* as confirming a district court's authority to issue a *Landis* stay in the face of a competing state court action. *See Noble v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 22-CV-02879-LB, 2022 WL 4229311, at *7 (N.D. Cal. Sept. 13, 2022)' *Icon at Panorama, LLC v. Sw. Reg'l Council of Carpenters*, No. CV 19-00181 CBM (MRWx), 2020 WL 5751228, at *1 (C.D. Cal. Mar. 12, 2020). Others have found that using Landis under such circumstances would undermine Colorado River's rules. *See Fisk Elec. Co. v. Obayashi Corp*., No. 18-CV-07671-EMC, 2021 WL 197671, at *2 (N.D. Cal. Jan. 20, 2021) (collecting cases and reasoning that Patel's dicta is not binding on lower courts).

[5] In its reply, Defendant appears to again make a new argument for first time, namely that a discretionary stay—or even outright dismissal—of this <u>entire action</u> might be appropriate under *Landis*. (See Doc. 46 at 10.) First, the Court is aware of no authority that suggests that the court has "discretionary" authority to <u>dismiss</u> a case. Second, as previously mentioned, this Court may disregard arguments raised for the first time in reply.

1    connection with the California class claims. Moreover, the Court is confident that counsel can

2    work to avoid duplicative burdens through coordinated discovery agreements.

3        As to judicial efficiency, the Court finds it difficult to fully evaluate that argument at this

4    time. First, it is not well developed in the briefs. Defendant simply argues in a single sentence that

5    "if the California Class Claims in [this] Action are not stayed, there will be a waste of judicial

6    resources in addressing nearly identical class certification and summary judgment motions, and a

7    high risk of conflicting or inconsistent outcomes." (Doc. 32 at 20.) These arguments depend

8    necessarily on the exact trajectory of any competing litigation: Are class certification and/or

9    summary judgment motions pending or forthcoming in those cases? Do they substantially

10   overlap? The record related to the pending motions is inadequate and stale[6] on these issues.[7] The

11   Court find a *Landis* stay is not warranted on the present record. This request is **DENIED**

12   **WITHOUT PREJUDICE**.

13                    **IV.    REQUEST TO STRIKE CLASS ALLEGATIONS**

14       Finally, Defendant moves to strike Plaintiff's class definition pursuant to Federal Rule of

15   Civil Procedure 12(f) on the ground that the SAC advances an "improper fail-safe class

16   definition." (Doc. 32 at 21–22.)

17       A "fail-safe" class is one that "impermissibly determines membership based upon a

18   determination of liability." *Lewis v. First Am. Title Ins*., 265 F.R.D. 536, 551 (D. Idaho 2010); *see*

19   *also Brazil v. Dell Inc*., 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) (finding proposed class was

20   a "fail-safe "class that could not be ascertained where in order "[t]o determine who should be a

21   member of these classes, it would be necessary for the court to reach a legal determination" that

22   the defendant was liable). The Ninth Circuit has indicated that "obvious problems" arise "when

23

---

24   [6] The Court acknowledges that it is not the Parties' fault that these motions have been pending for more than a year.
     This Court is laboring under an extraordinary resource shortage and the undersigned inherited more than 100 ripe
25   civil motions shortly after being confirmed to the District Court bench in early 2022.

26   [7] The Court notes that it has reviewed and takes judicial notice of the public dockets in both the *Price* and *Rodriguez*
     actions. Both cases were referred to settlement conferences by orders dated December 21, 2021. More recently, in
27   *Price*, the Plaintiff in this action filed a motion on November 28, 2022, seeking to intervene in *Price* in light of the
     settlement conference apparently scheduled for January 8, 2023. (See *Price* Docket.) That motion remains under
28   submission. Nothing in either docket suggests any active motions practice that will be duplicative of anything
     pending in this Court, further undermining Defendant's judicial efficiency argument.

1   the class itself is defined in a way that precludes membership unless the liability of the defendant

2   is established," including unfairness to the defendant and difficulties determining which

3   individuals should receive the class notice. *See Kamar v. RadioShack Corp.*, 375 Fed. Appx. 734,

4   736 (9th Cir. 2010). The Court understands Defendant's concern in this regard. The SAC

5   proposes the following California class:

6
7   > All persons who are employed or have been employed by Sutter
    > Valley Medical Center in the State of California who, within four (4)
    > years of the filing of the Complaint in this case, who have worked as
8   > non- exempt hourly employees and ***were not paid all lawful wages
    > or not paid statutory penalties***; and

9   (SAC, ¶ 34 (emphasis added).)

10          The caselaw as to what constitutes a fail-safe class is somewhat more nuanced than either

11  party acknowledges in their briefs. That notwithstanding, the Court finds that the procedural

12  mechanism of a motion to strike is not the appropriate means for addressing a fail-safe problem.

13  Defendant indicates that district courts "routinely" strike fail-safe class definitions. (Doc. 32 at 21

14  (citing *Dodd-Owens v. Kyphon, Inc*., No. C 06-3988 JF (HRL), 2007 WL 420191, at *3 (N.D.

15  Cal. Feb. 5, 2007) (striking the words "who have experienced gender discrimination

16  . . ." from a class definition on the ground that it created a "fail-safe class"); *Brazil v. Dell*, 585 F.

17  Supp. 2d 1158, 1167 (N.D. Cal. 2008) (striking class definitions because class defined as all

18  persons who purchased Dell computer products that "Dell falsely advertised.")).) More recent

19  cases acknowledge that because the Ninth Circuit has not expressly forbidden fail safe classes,

20  district courts retain discretion to redefine the class to avoid the fail-safe problem during the class

21  certification process. *See In re Autozone, Inc., Wage & Hour Emp't Practices Litig*., 289 F.R.D.

22  526, 546 (N.D. Cal. 2012); *see also Miholich v. Senior Life Ins. Co*., No. 21-CV-1123-WQH-

23  AGS, 2022 WL 410945, at *6 (S.D. Cal. Feb. 10, 2022), *reconsideration denied*, No. 21-CV-

24  1123-WQH-AGS, 2022 WL 1505865 (S.D. Cal. May 12, 2022) (denying motion to strike class

25  allegations defendant argued were "fail-safe," finding such a motion premature); *Rennick v.

26  NPAS Sols., LLC*, No. 19-CV-02495-ODW(KSX), 2020 WL 244170, at *2 (C.D. Cal. Jan. 16,

27  2020) (indicating that "[s]triking class allegations prior to a formal certification motion is

28  generally disfavored due to the lack of a developed factual record"); *Mattson v. New Penn Fin.,*

1  *LLC*, No. 3:18-CV-00990-YY, 2018 WL 6735088, at *4 (D. Or. Nov. 6, 2018), *report and*

2  *recommendation adopted*, No. 3:18-CV-00990-YY, 2019 WL 123870 (D. Or. Jan. 4, 2019)

3  (recommending denial of motion to strike because such motions are disfavored and instead

4  recommending evaluation of the class as it is defined in a subsequent motion for class

5  certification); *Moser v. Health Ins. Innovations, Inc.*, No. 17-cv-1127-WQH-KSC, 2018 WL

6  325112, at *11 (S.D. Cal. 2018) (stating that the determination of whether a class is fail-safe is

7  premature on a motion to strike). The Court finds these more recent cases persuasive. The motion

8  to strike the class allegations is **DENIED** as premature.

9  ### V.    CONCLUSION AND ORDER

10        For the reasons set forth above, Defendant's motion to dismiss, stay, and/or strike (Doc.

11  32) is **DENIED**.

12

13  IT IS SO ORDERED.

14     Dated:   **December 27, 2022**                              UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28